**KROGH & DECKER, LLP**
SHAWN M. KROGH, SBN 227116
 *shawnkrogh@kroghdecker.com*
MICHAEL D. CRODDY, SBN 198489
 *michaelcroddy@kroghdecker.com*
ÇAĞIL AREL, SBN 333564
 *cagilarel@kroghdecker.com*
555 Capitol Mall, Suite 700
Sacramento, California 95814
916.498.9000 (p)
916.498.9005 (f)

Attorneys for Defendant,
Infinite Energy Home Services, Inc.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFINITY ENERGY, INC., a California Corporation, <br><br> Plaintiff, <br> v. <br><br> INFINITE ENERGY HOME SERVICES, INC., a California Corporation, <br><br> Defendant. | Case No. 2:21-cv-00438-WBS-KJN <br> Hon. William B. Shubb <br><br> **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: May 30, 2023 <br> Time: 1:30 p.m. <br> Location: Courtroom 5 |

///

///

///

///

///

///

///

///

///



1

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................... 2

TABLE OF AUTHORITIES ........................................ 3

QUESTION PRESENTED .......................................... 5

STATEMENT OF FACTS .......................................... 5

ARGUMENT ................................................... 11

  A. Because Plaintiff's Evidence is in Deficit, Plaintiff
     will not Survive the Burden of Proof required by
     Trial ................................................ 12

  B. A Sleekcraft Analysis Confirms That No Reasonable
     Jury Member Can Conclude That Defendant Is Likely to
     Confuse .............................................. 13

       1. The Servicemark is Weak ......................... 14

       2. The Proximity of Services is not Good Enough .... 18

       3. The Names are Different .......................... 21

       4. Actual Confusion. There is none. ................ 22

       5. Marketing Channels do not Evidence Consumer
          Confusion ..................................... 26

       6. These Buyers are Careful ........................ 28

       7. Defendant's Intent is Missing from the Record ...29

       8. Expansion in Product Lines is Irrelevant ........ 30

  C. Defendant is Unlikely to Confuse .................... 30

  D. Plaintiff Cannot Link Defendant to Alleged Injuries .. 31

  E. Defendant Requests Partial Summary Judgment on
     Damages ............................................. 31

  F. Plaintiff Cannot Proceed to a Jury .................. 33

Conclusion ................................................. 33

/// 



## **TABLE OF AUTHORITIES**

*Am. Auto. Ins. Co. v. Am. Auto Club*,
 184 F.2d 407 (9th Cir. 1950) ...................................... 27
*AMF Inc. v. Sleekcraft Boats*,
 599 F.2d 341 (9th Cir. 1979) ................................. 12, 16
*Anhing Corp. v. Thuan Phong Co.*,
 2015 WL 4517846 (C.D. Cal. July 24, 2015) ........................ 32
*AntiMonopoly, Inc. v. General Mills Fun Group*,
 611 F.2d 296 (9th Cir. 1979) (affirming order vacating .......... 32
*Avery Dennison Corp. v. Acco Brands*, Inc.,
 1999 WL 33117262 (C.D. Cal. Oct. 12, 1999) ...................... 22
*Blau v. YMI Jeanswear, Inc.*,
 2004 WL 5313967 (C.D. Cal. Jan. 2, 2004) ........................ 31
*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
 174 F.3d 1036 ................................................... 13
*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ............................................. 12
*Century 21 Real Estate Corp. v. Sandlin*,
 846 F.2d 1175 (9th Cir. 1988) .................................... 9
*Cleary v. News Corp.*,
 30 F.3d 1255 (9th Cir. 1994) ..................................... 9
*Dahl v. Swift Distribution, Inc.*,
 2010 WL 1458957 (C.D. Cal. Apr. 1, 2010) ........................ 24
*Danjaq LLC v. Sony Corp.*,
 263 F.3d 942 (9th Cir. 2001) .................................... 32
*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
 11 Cal. 4th 376, (1995) .......................................... 9
*Dr. Seuss Enterprises v. Penguin Books USA, Inc.*,
 109 F.3d 1394 (9th Cir. 1997) ................................... 12
*Duluth News-Tribune v. Mesabi Pub. Co.*,
 84 F.3d 1093 (8th Cir. 1996) ........................... 22, 23, 25
*Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
 2015 WL 3498607 (C.D. Cal. June 2, 2015) ........................ 30
*Entrepreneur Media v. Smith*,
 279 F.3d 1135 (9th Cir. 2002) ........................... 15, 16, 20
*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
 618 F.3d 1025 (9th Cir. 2010) ................................... 21
*Intel Corp. v. Americas News Intel Pub., LLC*,
 2010 WL 2740063 (N.D. Cal. July 12, 2010) ........................ 8
*Jackson v. Werner*,
 394 F. Supp. 805 (W.D. Pa. 1975) ................................ 10
*JL Beverage Co. v. Jim Beam Brands Co.*,
 828 F.3d 1098 (9th Cir. 2016) ................................... 13
*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 ................................................ 31
*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
 982 F.2d 1400 (9th Cir. 1993), rev'd........................ 30, 31
*M2 Software, Inc. v. Madacy Entm't*,



421 F.3d 1073 (9th Cir. 2005) .......................................... 21
*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003) ............................ 22
*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*,
   856 F.2d 1445 (9th Cir. 1988) .................................... 21
*Morrison Entm't Grp. Inc. v. Nintendo of Am., Inc.*,
   56 F. App'x 782 (9th Cir. 2003) .................................. 21
*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................... 12, 13
*New Kids on the Block v. News Am. Publ'g, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ..................................... 19
*Oculu, LLC v. Oculus VR, Inc.*,
   2015 WL 3619204 (C.D. Cal. June 8, 2015) ......................... 24
*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) .................................. 21, 26
*Pfizer Inc. v. Sup. Ct.*,
   182 Cal. App. 4th 622 ............................................ 30
*Playboy Enters. v. Netscape Communs. Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ........................... 26, 28, 29
*Rodeo Collection, Ltd. v. W. Seventh*,
   812 F.2d 1215 (9th Cir. 1987) ............................... 11, 13
*Scott v. Harris*,
   550 U.S. 372 (2007) .............................................. 12

Statutes

15 U.S.C. § 1114(1)(a) ............................................... 8
15 U.S.C. § 1117(a) ................................................. 30
15 U.S.C. § 1125(a) .................................................. 8
15 U.S.C. § 1127 .............................................. 5, 10, 18
Cal. Bus. & Prof. Code § 17204 ..................................... 30
Cal. Bus. & Prof. Code §§ 17203 and 17204 .......................... 30
Cal. Civ. Code section 1770 ......................................... 9
California Business & Professions Code § 17200 .............. 8, 9, 31
U.S. Const. amend. VII .............................................. 32

Rules

Federal Rules of Civil Procedure, Rule 56 .......................... 10



4

**QUESTION PRESENTED**

The Lanham Act provides that a person's tradename does not violate a registrant's rights to a trademark unless he uses the tradename in a manner likely to confuse. Plaintiff is in the Solar industry and has a servicemark for "Infinity Energy". Plaintiff is accusing Defendant of intentionally using Defendant's tradename "Infinite Energy Home Services" to confuse people as to the source of Plaintiff's services. Plaintiff can show that Plaintiff's servicemark shares a linguistic element with Defendant's tradename. Although Plaintiff alleges actual and likely consumer confusion, Plaintiff's materials lack objective evidence of consumer opinion and objective evidence of actual confusion.

Discovery is now closed. Is there enough for the trier of fact to conclude that Defendant is likely to confuse?

**STATEMENT OF FACTS**

This dispute is over the legal right to a concept and who owns how much of it. The concept is a business venture into the Solar industry under the brand "Infinity Energy."

Plaintiff Infinity Energy, Inc. ("Plaintiff") and Defendant Infinite Energy Home Services, Inc. ("Defendant") are two separate companies with two separate versions of the same concept. A few years ago, Plaintiff realized that it was not alone in this venture and there were others who had come up with similar ideas. So, in 2020, Plaintiff claimed its own rights to name Infinity Energy at the United States Patent and Trademark Office ("USPTO")(SUF 1-5[1])

Defendant, with the tradename "Infinite Energy," was dabbling in

---

[1] All "SUF" citations refer to the Separate Statement of Undisputed Facts accompanying Defendant's motion

Solar energy when it happened to be spotted by Plaintiff. Having been eyeing Defendant for a few years, Plaintiff filed suit as soon as it got its hands on the registration certificate. (SUF 5; Plaintiff's Complaint (Mar. 10, 2021) ECF No. 1) Suddenly Defendant was handed a long list of arbitrary accusations and found itself in Federal court. Unfortunately for Defendant, it is missing a USPTO certificate over its tradename. It makes do with what it can get under the common law.

So, Plaintiff accuses Defendant of running away with Plaintiff's idea and diverting its target audience. Although in its Complaint, Plaintiff admits that Defendant's tradename is not identical to Infinity Energy. Instead, Defendant's tradename is Infinite Energy. (Plaintiff's First Amended Complaint ("Am. Compl.") ECF No. 7, ¶ ¶ 15-16) Plaintiff is deeply concerned. It is convinced that Defendant is going to cause market-wide confusion. It thinks Defendant already did.(Am. Compl. ¶ ¶ 7, 31-32, 34)

Under 15 U.S.C. § 1127, Plaintiff has the right to a servicemark for the name Infinity Energy. It is a word character mark. Plaintiff is prevented from enforcing its right over a particular design, style, font, or color. (SUF 1-5) Before letting Plaintiff enter the registry, USPTO forbade Plaintiff the exclusive rights to the word Energy. (SUF 3) Evidently, the idea is not original and common to everyone in the industry. So, Plaintiff turned the word over and wrote into the record that the servicemark were to be used in connection with only the "installation of Solar energy systems and alternative energy products for residential and commercial use." (SUF 1) This is the limit to the Plaintiff's rights over the overall concept. And this servicemark is the only issue in this dispute.

Plaintiff uses the servicemark to service Solar energy in seven



states: California, Texas, Nevada, Idaho, Florida, Colorado, and New Jersey. (SUF 16) Defendant is in three counties: El Dorado, Placer, and Sacramento, all within California. (SUF 17)

To show how similar Defendant's tradename is to Plaintiff's servicemark, Plaintiff brings in an expert on language and linguistics during discovery. The expert closely examines the words Infinity and Infinite and says there is barely a difference. (SUF 24) Plaintiff and Defendant proceed to litigate over it for two years.

Discovery closes. In the end, they find that the word Infinity is similar to the word Infinite. Most Solar companies happen to agree. Because they also use the word Infinity to market Solar energy.(SUF 10)

Nobody disagrees that Solar energy comes from the Sun.(SUF 9) Presumably, the Sun must have an infinite supply of Solar energy. Having also made the connection, Defendant deposes the Cameron Kelly —who claims to have come up with the idea to open up a business in the name of Solar energy and call it Infinity Energy.(SUF 7)

"Is the name Infinity Energy unique?" Answer no. "Do you think it would be a common name for a Solar company?"
"Common idea, but common ideas don't necessarily need to be replicated," says Cameron Kelly.

But then he immediately continues "the word energy is very common in the Solar space." "I was going to say, being used together, I should say, is not necessarily a common idea. Because Infinity has nothing to do with power." (SUF 7; Def. Ex. D, 31:5-22)

Though his case is not about how an obvious idea to open a business in Solar energy and call it Infinity Energy. This is also a case where Plaintiff is asking the trier of fact to determine whether Defendant uses its tradename in such a way that it is causing a likelihood of

7



deception or confusion among customers, and whether Defendant does so with malice.

Plaintiff insists that Defendant has a scheme to use its tradename Infinite Energy to intentionally cause confusion in the marketplace. According to Plaintiff, Defendant's plan is to pass off its services as Plaintiff's so that Defendant can exploit Plaintiff's reputation for profit. Plaintiff claims Defendant planned all this to cash in on Plaintiff's business. Plaintiff's Complaint decorates this theory with colorful words, e.g., conduct that is intentional, knowing, malicious, fraudulent, and so on.(Am. Compl. ¶ 7, 32-34, 39-40, 47)

But Plaintiff omitted to interview any customers about any of this to see whether people were actually confused between Plaintiff and Defendant's services. In fact, Plaintiff did not interview any customers about anything related to Plaintiff's mark. And Plaintiff did not even track or poll any customers to gauge public opinion. Above all, Plaintiff did not conduct a consumer survey to test for the likelihood of confusion between Plaintiff and Defendant. (SUF 21-23, 27)

Throughout the Complaint, Plaintiff repeatedly claims that Defendant not only confused Plaintiff's customers and killed over a million dollars worth of profit, but that Defendant did it with malicious intent. (Am. Compl. ¶ ¶ 24-25, 27-28 32-34, 46-47) Plaintiff throws two factual allegations into the Complaint that Plaintiff claims to show this apparent malice:

1.    Plaintiff sent a cease-and-desist letter to Defendant approximately six months before Plaintiff filed this suit (though the letter attached as Exhibit 2 to Plaintiff's First Amended Complaint is undated and unsigned.) The cease-and-desist letter reads: "[Plaintiff]



1 presumes [Defendant]'s knowing and willful adopting of the Infinite
2 Energy Home Services trademark was an intentional attempt to ride off
3 of the goodwill and reputation that [Plaintiff] has worked for many
4 years to create." The letter also notes: "I would also bet that
5 [Defendant] is receiving multiple calls per week from consumers who are
6 trying to reach [Plaintiff.]" (Am. Compl., Ex. 1)

7     2.  Plaintiff's September 2020 registration of Infinity Energy
8 servicemark gave constructive notice to Defendant that Plaintiff owns
9 the rights to the servicemark. (Am. Compl. ¶ 25)

10     Thus, Plaintiff concludes, Defendant is conspiring to trade on
11 Plaintiff's goodwill and reputation to injure Plaintiff in a great and
12 irreparable way. (Am. Compl. ¶ 7, 32-34, 39)

13     Plaintiff's asserts four causes of action against Defendant: (1)
14 Federal Trademark Infringement under the Lanham Act § 32; (2) Federal
15 Unfair Competition, False and Designations of Origin under the Lanham
16 Act §43; (3) Unlawful, Unfair, Fraudulent Business Practices under
17 California Business & Professions Code § 17200 *et seq*; and (4)
18 Intentional Interference with Prospective Economic Advantage.

19     **Federal Trademark Infringement**. To prevail, Plaintiff must
20 show:(1) ownership of a registered trademark; (2) Plaintiff's use of
21 the mark before Defendant's; (3) Defendant's use of the mark without
22 Plaintiff's consent; and (4) Defendant's use is causing a likelihood
23 of confusion, mistake, or to deceive. 15 U.S.C. § 1114(1)(a); *Intel*
24 *Corp. v. Americas News Intel Pub., LLC*, No. C 09-05085 CRB, 2010 WL
25 2740063, at *2 (N.D. Cal. July 12, 2010)

26     **Federal Unfair Competition, False and Designations of Origin**. The
27 elements to this cause of action are identical to the elements of a
28 federal trademark infringement claim. Except Plaintiff's mark does not



have to be registered. 15 U.S.C. § 1125(a); *Intel Corp., supra.*

**Unlawful, Unfair, Fraudulent Business Practices under California Business & Professions Code § 17200 *et seq.*** Plaintiff brings this cause of action under the Lanham Act. Plaintiff alleges "Defendant's actions, in committed all of the aforesaid acts of infringement, were 'fraudulent' acts as meant by the UCL (Unfair Competition Law), in that they were reasonably likely to deceive or mislead consumers. Defendants' actions, as alleged herein, include practices which are proscribed Cal. Civ. Code section 1770. By engaging in such proscribed practices Defendant has committed "unlawful" acts as meant by the UCL." (Am. Compl. ¶ 36-37)

The Ninth Circuit provides that "actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act. *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (holding that under both, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks.")

**Intentional Interference with Prospective Economic Advantage.** Plaintiff's final cause of action has the following elements: (1) an economic relationship between Plaintiff and some third party, with the probability of future economic benefit to Plaintiff; (2) Defendant's knowledge of the relationship; (3) intentional acts on the part of Defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to Plaintiff proximately caused by the acts of the defendant. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 389, (1995) Seemingly, Plaintiff fourth claim is that Defendant's interference was infringement upon



Plaintiff's trademark "Defendant has intentionally engaged in wrongful acts designed to interfere with or disrupt the relationship by, including, but not limited to the acts designated supra in paragraphs 14 through 19 of this Complaint."(Am. Compl. ¶ 45)

Thus, each cause of action rests on Plaintiff's claims for trademark infringement.

**ARGUMENT**

Under § 32 of the Lanham Act, a person who uses a name similar or identical to a registered trademark does not violate the mark owner's right unless the person's use is likely to confuse or deceive people. This law intends to "protect persons engaged in . . . commerce against unfair competition" by imposing liability on "deceptive and misleading use of marks." 15 U.S.C. § 1127.

Defendant requests for the Court to "pierce Plaintiff's pleadings and assess the proof in order to see whether there is a genuine need for trial." Federal Rules of Civil Procedure, Rule 56 (amended 1963). Given that the parties completed two years' worth of discovery, it is proper for the Court to test whether there is any real basis for Plaintiff's accusations. Fed. R. Civ. P. 56; see also *Jackson v. Werner*, 394 F. Supp. 805 (W.D. Pa. 1975).

If the record —with no room for controversy— establishes that the chances of Plaintiff securing its burden of proof at trial to demonstrate a violation of its rights are slim to none, Rule 56 is an effective tool for this Court to draw a line in the sand. To that end, if the record —with no room for controversy— establishes that no reasonable member of the jury can or even given enough material to conclude that Defendant is using a tradename in a way likely confusing or deceiving consumers, this Court can use the full latitude of Rule 56



to enforce what the Lanham Act has intended all along.

Plaintiff's second cause of action for unfair competition and false designation of origin under § 43 of the Lanham Act carries the same burden of proof as the trademark infringement claim under § 32. Plaintiff's third and fourth causes of action also rely on § § 32, 43 of the Lanham Act, and so, fall the same burden of proof.  As to the first claim, to show trademark infringement, Plaintiff must demonstrate a likelihood of confusion. Likelihood of confusion is circumstance-specific and turns on consumer perception. And Plaintiff does not have enough evidence to demonstrate one.

Because Plaintiff falls short of the required burden of proof, the first cause of action for trademark infringement merits summary judgement. If the Court agrees, then summary judgement also applies to the other three claims. Because the remaining causes of action are all pyramided on the trademark infringement claim, this Court should dispose of this suit.

**A. Because Plaintiff's Evidence is in Deficit, Plaintiff will not Survive the Burden of Proof required by Trial.**

Trademark infringement claims are not immune to summary disposition. To push this case to a resolution, the Court can narrow down the legal issues and eliminate the need for trial.

First, Defendant moves for summary adjudication on the issue of likelihood of confusion because no reasonable juror can possibly find that Defendant uses its tradename in a way that is causing a likelihood of confusion among consumers.

If the case proceeds to trial, the burden awaiting Plaintiff is nothing less than steep. The burden of proof does not just stop at a mere possibility. Not only must Plaintiff demonstrate to the jury that

the likelihood of confusion Defendant is allegedly causing is *probable*, but by the preponderance of the evidence, Plaintiff has the burden to both *produce* the evidence and *persuade* the jury. *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)

But Plaintiff's evidence reveals that Plaintiff falls short. Even when we give Plaintiff the maximum benefit of all the admissible evidence, including those Plaintiff *could* admit into evidence, a reasonable jury cannot possibly find that consumers are likely confused or deceived because of Defendant's use of its tradename. That is because the record lacks objective evidence supporting neither a likelihood of confusion, nor one that is attributable to Defendant. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

And Defendant shoulders its own burden to establish the basis for this motion and the burden to identify the supporting materials as follows: (1) Plaintiff cannot provide evidence to support a finding of likelihood of confusion, which is an essential element of Plaintiff's trademark infringement claim, (2) Defendant can present facts to negate Plaintiff's belief that Defendant is likely causing confusion, (3) When the two points weighed together, they reveal that no reasonable jury member can find that there is a likelihood of confusion among consumers.

**B.   A Sleekcraft Analysis Confirms that No Reasonable Jury Member can Conclude that Defendant is Likely to Confuse.**

The Ninth Circuit instructs us to consider the eight-factor *SleekCraft* test and adapt it as necessary to analyze the likelihood of consumer confusion. *Dr. Seuss Enterprises v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) *citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348--49 (9th Cir. 1979). *Sleekcraft* is not meant to be a



checklist. But Plaintiff "must demonstrate likely confusion, not mere diversion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

These eight factors are:

> [1] strength of the mark; [2] proximity of the goods or services; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods or services and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.

*Id.*

These factors are flexible. They are meant to be adapted to the particular circumstances of a case. *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016). Defendant analyzes them all to ensure Plaintiff is given the maximum benefit of the evidence.

### 1.   The Servicemark is Weak.

Like all trademarks, the strength of Plaintiff's mark is measured on a spectrum of strong to weak. Strong marks stand out more than others, and they are more likely to be remembered. And thus, we award them with greater protection. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999. The Ninth Circuit has two relevant measurements to evaluate the strength of a mark: (1) conceptual strength and (2) commercial strength. *Network Automation, supra,* 1149.

Conceptual strength is the classification of a mark over a spectrum of five categories that gradually increases along with the mark's distinctiveness. The spectrum begins from the least distinct generic, then goes onto descriptive, suggestive, arbitrary, and fanciful. Whether a mark is conceptually strong depends on the obviousness of the mark's connection to the services it refers. *Network Automation*, *supra*. And commercial strength is based on "actual marketplace recognition."



*Id.*

A mark's strength depends, of course, upon the goods and services the mark promotes. A helpful example would be "the mark BRILLIANT may be 'descriptive' on diamonds, 'suggestive' on furniture polish, and 'arbitrary' on canned applesauce." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215 (9th Cir. 1987).

Infinity Energy markets Solar energy systems. (SUF 1, 30, 38) Solar energy derives from the Sun. (SUF 9) Nothing in Plaintiff's evidence shows a foreseeable depletion of the Sunshine, and no reasonable person could say that the Solar power of the Sun has a set limit. Even Plaintiff's banner says "There's never a shortage of Solar energy." Dictionaries also confirm that the word Infinity describes an unlimited extent of time, space or quantity. (SUF 6) It is the dictionary definition alone that connects Plaintiff's servicemark Infinity Energy to Solar energy.

One thing the Plaintiff does not dispute, and cannot dispute, is the abundance of Sunlight. (SUF 39) The record is devoid of any objective evidence showing that Infinity Energy refers to a limited energy source. There is no evidence to show, say, when consumers hear the word Infinity Energy, they are reminded of gas & oil. The road from Infinity to the Sun does not take a great mental leap.

Because Infinity Energy describes the infinite character of Solar energy, it is suggestive at best. It did nothing to earn the strong level of protection we award trademarks that actually stand out.

But even if a jury member were to determine that promoting Solar energy with the name Infinity Energy is somehow a powerful concept — and it is not— Plaintiff hasn't shown a type of commercial success that may have bolstered the mark's strength either. Plaintiff declares

15



itself as a "leader" in the Solar industry of Northern California. (Am. Compl. ¶ 9) Plaintiff's evidence is just ads, brochures, and websites. Anyone could have printed it out in their garage the day before filing suit.(SUF 30, 39) There is nothing objective that could lead a reasonable person to conclude that Plaintiff is so commercially famous that any tradename similar to Plaintiff's servicemark is probably making consumers be confused. In fact, there is nothing in Plaintiff's evidence that could help the fact finder ascertain what Plaintiff's actual marketplace recognition is. Nothing in the record could objectively convey the idea that Plaintiff's brand is well-known, and nothing could show the trier of fact that Plaintiff's mark is notable.

That is because whether consumers are likely confused or not is going to depend at least on the consumers' general level of awareness. Plaintiff claims that it has a "strong brand recognition." (Am. Compl. ¶ 25) But we are not told who recognizes Plaintiff. We are not told how many people recognize Plaintiff. We are not told to what extent they recognize Plaintiff. (SUF 21, 28) And let us remember, this can't just be about one customer. The jury needs to determine that "an appreciable number of people" are confused. *Entrepreneur Media v. Smith*, 279 F.3d 1135 (9th Cir. 2002).

Nor the mark comes even close to being original. There are currently 66 live registered trademarks with the word Infinity, including those with alternate spelling (e.g. Defendant's use of Infinite) that are registered under Class 037. (SUF 11) That is the same class Plaintiff registered its servicemark. There are at least 20 live trademarks at the USPTO that uses the word Infinity to market Solar energy. (SUF 12) And there are at least 841 live registered trademarks with the word Energy in the Solar industry. (SUF 13) If the



Defendant's Memorandum of Law in Support of Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment

case were to end up at trial, a group of twelve jury members will be paneled to answer questions like: How strong is the mark if dozens of people in the same industry use it too? Without looking at anything, do you think there's a chance the public knows Plaintiff well enough? Can you *feel* how many people know of Plaintiff? Can you try to *guess* if they would be confused?

The evidence submitted with this motion is watered down to help Plaintiff, yet Plaintiff still does not have a leg to stand on. Just to illustrate the point: The foreign businesses abroad who use the name Infinity Energy are omitted from the record. The numbers consist of similar names used by American businesses and in America only. And within the American marketplace, the search is narrowed down to include only the number of people who actually entered the name for registration at the USPTO. And within those people, the numbers include only the registry entries that are live and active at present. (SUF 11-13)

Even Plaintiff's Chief Sales Officer, Cameron Kelly doesn't believe that Infinity Energy is a unique name —and he came up with it.(SUF 7)

As the most flattering evidence for Plaintiff, the numbers ignore all accounts of parties who have already thought of the idea and moved on since. The evidence also leaves out all accounts of relevant mark owners who forgot or just did not know about the periodic maintenance filings that lapsed the marks. So, to Defendant's detriment, even if we were to turn a blind eye to any prior uses that may still be confusing Americans[2], Plaintiff's mark is still a pedestrian affair.

**2. The Proximity of Services is not Good Enough**

---

[2] Those, perhaps, have no idea that the business they know has since closed.

The Ninth Circuit held that the proximity of goods or services rest on a sliding scale. "Goods are proximate if the goods are similar in use and function." *Sleekcraft*, supra, 350. When a mark is weak, the proximity of goods factor is weightless in the likelihood of confusion analysis. That is because, as Ninth Circuit explains the "approach takes into account the fact that consumers may well recognize that [parties] use terms for what the word means, not because of an association with any one company." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002). Thus, the Ninth Circuit logically concludes "there is a broad societal interest in preserving common, useful words for the public domain."

The longstanding consensus of the Ninth Circuit shows that the proximity between Plaintiff and Defendant's services does not purport to weigh much because Plaintiff's mark is already bordering fragile both as a concept and as a commercial attempt. In these instances, Ninth Circuit prioritizes the interests of society.

Here, the societal interest is the people's right to look at a word not uncommon in English and interpret the word for what it actually means. And again, in the name of awarding Plaintiff the maximum benefit, even if we were to imagine that the mark is so strong to the point it warrants this Court to prohibit the public from using it[3], this factor's ability to support Plaintiff is slight at best. Then it is repetitively overwhelmed by the remaining seven factors.

Still standing under the best light for Plaintiff. Parties do not dispute that Plaintiff's mark is used within the Solar energy industry. (SUF 1) Parties do not dispute that Defendant also occupies space in

---

[3] A scenario that would open the door to market domination through exclusive claims over language and turn the Lanham Act's stance against unfair competition on its head.



the Solar industry.(SUF 14, 31) Parties do not dispute that Defendant uses the commercial name Infinite Energy and in marketing its business. (SUF 14, 31) And as far as Defendant has been able to discover, Plaintiff does not dispute that Defendant provides goods and services outside of Solar, for example, electrical services, installation of windows, doors, HVAC, and so on. Despite some overlap Solar industry, Plaintiff has not disagreed that Defendant's business does more than just Solar.

As Plaintiff pointed out, Defendant makes commercial use of the name Infinite Energy for Defendant's business.(SUF 14, 31, 33)Defendant used the word Infinity Energy at some point. (SUF 32) Often times the name is short for Defendant's alternative name "Infinite Energy Home Services." (SUF 14) Both can be seen on the home page of the Defendant's website —the same website Plaintiff identified in its Complaint (the "Defendant Website")(SUF 31)(Am. Compl., ¶ 15) Defendant Website displays other items in addition to Solar energy, including sale of goods and services for domestic use outside of Solar, such as electrical services, installation of windows, doors, HVAC, and so on.

But this is not the place to determine the truth behind whether Defendant is actually providing those goods and services.

Instead, the record establishes the following: (1) Plaintiff acknowledges that Defendant Website belongs to Defendant, (2) Defendant Website displays advertising for other goods and services than just Solar energy, and (3) Defendant Website features terms such as Whole House Fans," "Electrical Services," Home Energy Audit".

On the other side of the coin, Plaintiff does not have evidence that may suggest Defendant Website does not feature any of it. But since we do not weigh the credibility of evidence at this stage,



Defendants' other ventures are still irrelevant. Instead, the point is a reasonable jury member looking at Defendant Website will likely infer that Defendant uses a tradename unidentical to Plaintiff in connection, not just with Solar energy, but also with other market industries. This likelihood is of probative value.

Equally probative is, Plaintiff registered Infinity Energy as a servicemark. And 15 U.S.C. § 1127 defines a servicemark as "any word, name, symbol, or device, or any combination thereof— used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source if unknown." The statute excludes the word "goods" in that definition.

As to the rights Lanham Act confers to Plaintiff, they are in the Plaintiff's registration certificate. (SUF 1-5) Another fact not in dispute, Plaintiff can use its mark to install "Solar energy systems and alternative energy products for residential and commercial use." (SUF 1) This show that Plaintiff already narrowed the scope of the mark's rights under the Lanham Act. Plaintiff never amended the mark's registration, nor its application to change the services provided under the mark. Plaintiff neither added nor removed any international classes throughout the prosecution history of the mark. Nor Plaintiff amended the mark after its registration. Plaintiff's sole change to the servicemark was when Plaintiff was forced to disclaim the exclusive rights to the word energy. (SUF 41)

And now, Plaintiff cannot step outside the line it drew around itself.

Imagine Defendant owns two stores. Down the road, it has a is Solar energy store. Up the road, it has an Electrical store that



1  replaces sockets, and happens to fall under the general umbrella of the
2  business name as a whole. Presumably, Congress did not intend to give
3  Plaintiff the right to throw a statutory rope around the Electrical
4  store's neck and yank it out the market, then justify the murder with
5  phonetics.

6  　　Plaintiff has a "limited property right" in the mark. *New Kids on*
7  *the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) There
8  may be some overlap in the services, but it slides low on the Ninth
9  Circuit scale.

10  　　**3.   The Names are Different**
11  　　To distinguish the names, we follow Ninth Circuit's three axioms:
12  "(1) Marks should be considered in their entirety and as they appear
13  in the marketplace, (2) Similarity is best adjudged by appearance,
14  sound, and meaning; and, (3) Similarities weigh more heavily than
15  differences. Entrepreneur, supra, 1144.

16  　　Assuming that we are a customer in the marketplace, here are the
17  two marks:





| PLAINTIFF | DEFENDANT |

25  　(SUF 42-43) At a first glance, they are different. While the
26  artistry is pleasing, Plaintiff does not actually own the rights to
27  it.(SUF 2) But if it benefits the Plaintiff, we consider it regardless.
28  Yes, Infinity and Infinite are two different but similar words. But



that is it. And it is not enough. We cannot discount the single linguistic similarity, but viewing the marks a whole, a reasonable jury is more likely to find the marks more different than similar.

The marks do not share a color palette, do not share fonts, and do not share illustrations. Even their verbal aspect consists of different phrases and intersect only at Infinity for Plaintiff and Infinite for Defendant —words that are already different. The single remaining intersection is the word Energy, which is disclaimed by Plaintiff, and currently in use nationwide by at least 841 parties in the same industry. (SUF 13)

Defendant's centerpiece alone mitigates the likelihood of confusion. It is a bright green thunderbolt, larger in size compared to the rest of the tradename. Defendant's name reads INFINITE ENERGY HOME SERVICES. Below it are the words, "SOLAR – ROOFING – ELECTRICAL – HOME BATTERY – HVAC – WINDOWS." That is the last batch of straws that finally breaks the proverbial camel's back. (SUF 43)

The Ninth Circuit also notes, "use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073 (9th Cir. 2005) *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) The dozens of other similar names in the marketplace proves the point.

**4.   Actual Confusion. There is none.**

Courts have consistently held that the evidence of actual confusion is a strong indication that confusion is also likely in the future. *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1393 (9th Cir. 1993) And actual confusion can be proven by a reliable and relevant survey. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,



618 F.3d 1025, 1035 (9th Cir. 2010)

None of this is to say that Plaintiff needs evidence of actual confusion to prevail on this motion for summary judgment. And it is certainly not mandatory for Plaintiff to submit a survey. Yet it is troubling that Plaintiff chose not to. Because "the absence of a survey can be telling," and "a lack of evidence of actual confusion may strongly indicate that confusion is unlikely" *Morrison Entm't Grp. Inc. v. Nintendo of Am., Inc.*, 56 F. App'x 782, 785 (9th Cir. 2003). (SUF 20)

The plain text of Plaintiff's allegations is that Defendant's "activities have caused and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception (Am. Compl. ¶ 32) But Plaintiff did not identify a single person who bought Defendant's services thinking it was Plaintiff's services. (SUF 19)

Defendant conducted the deposition of a designed 30(b)(6) representative as the person most qualified to speak for Plaintiff. And Mr. Kelly only provided vague hearsay accounts of having heard instances of some confusion. When pushed further, Mr. Kelly admitted that he had no direct knowledge of the inquires Plaintiff allegedly received from third parties attempting to reach Defendant instead of Plaintiff. (SUF 19, 22) These vague reports of customer inquiries, particularly when they are delivered by unidentified people to unidentified staff on unspecified dates without a shred of documentation, do not exhibit actual confusion. It only exhibits a chain of inadmissible hearsay.

Mr. Kelly could not even say for certain how many people had bought Defendant's services thinking Defendant was Plaintiff. According to Mr. Kelly, Plaintiff failed to track any communication displaying customer confusion. (SUF 19, 22, 28)

District courts come across these situations regularly. One court



disregarded allegations of consumer confusion because plaintiff did not provide any names, dates, details, or documents supporting the alleged confusion. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1094 (C.D. Cal. 2003). The court ruled "[Plaintiff] cannot substantiate its claims of actual confusion, which the Court finds to be unreliable and nothing more than inadmissible hearsay." *Id.*

Another court also discounted plaintiff's allegations that defendant was confusing people because, the court found, tales of phone calls of unidentified consumers, conversations between unidentified staff and identified persons were inadmissible hearsay. It did not amount to confusion. *Avery Dennison Corp. v. Acco Brands,* Inc., No. CV99-1877DT(MCX), 1999 WL 33117262, at *18 (C.D. Cal. Oct. 12, 1999) *see also  Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996)( "vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion'")Even if the evidence was somehow admissible, the Court continued, the ""proof" of actual confusion is unclear and insubstantial . . . these statements do not contain any basis for the confusion." *Id.*

The same can be said for Mr. Kelly. His accounts of having heard things is the exact kind of evidence already barred by caselaw.

Another document Plaintiff produced is a single email correspondence dated March 10, 2022 Plaintiff received from a third party as "evidence" of confusion. But the person who sent this email is not confused. He is not talking about Plaintiff. He is talking about Defendant. In the email, he says, "I've called and emailed Rich . . ." and "Rich advised me that PG&E . . ." (SUF 44) Rich Walton is the Chief



Executive Officer for Defendant. (SUF 40) This person seems to be bad with company names. And this email is not evidence of actual consumer confusion.

For the remaining isolated instances of consumer "evidence" Plaintiff's expert says "people do often confuse the words INFINITY and INFINITE" which, he says "can be demonstrated with an ordinary Google search." If he tries to fill the search box with "an infinity number of" to order to retrieve results for this exact phrase, Google attempts to correct this to "an infinite number of." He notes "even Google seems to be confused." (SUF 23)

Defendant's rebuttal expert finds this experiment "disturbing." Search results are not evidence of people being actually confused. (SUF 29) Google is not a human being. A number of courts happen to agree.

One court having come across a near identical situation and explained "[t]o the extent that Plaintiff is relying on the Google search engine's propensity to auto-correct searches for "oculu" to searches for "oculus" or to intermingle "oculu" and "oculus" search results, such evidence is not evidence of customer confusion. *Oculu, LLC v. Oculus VR, Inc.,* No. SACV 14-0196 DOC, 2015 WL 3619204, at *13 (C.D. Cal. June 8, 2015); *see also Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *9 (C.D. Cal. Apr. 1, 2010) (declining "to accept plaintiff's contention that the alleged confusion of the google search engine indicates that consumers are actually confused") The court remarked that the use of another's trademark as a search engine keyword does not actually violate the Lanham Act. *Id.* In this instance, this "evidence" of consumer confusion is nothing more than Google correcting Mr. Farrell's grammar.



1    Another "evidence" Plaintiff's expert distorts as actual evidence
2  of consumer confusion is a 2015 webpage with testimonials for an
3  Australian company named Infinite Energy on which two users use the
4  word Infinity instead of Infinite to refer to the Australian company.
5  (SUF 26)

6    Not only this is not evidence of actual consumer confusion. It is
7  also not an alleged confusing use by Defendant. Nor this evidence
8  affects the United States commerce. This Court cannot be asked to
9  adjudicate the activities of an Australian company that may be causing
10 confusion somewhere in the great wide world without a shred of evidence
11 of American involvement. And even in a fairyland where this Court could
12 somehow reach outside of the U.S. territories to regulate the commerce
13 of the Commonwealth of Australia, Defendant is not the correct party
14 to that fictional lawsuit.

15   Plaintiff's showing of consumer confusion is at best conjecture,
16 and at worst imaginary. It would have helped if there was a consumer
17 survey. But there is none. So, not only Plaintiff cannot give much to
18 the jury to help gauge the likelihood of consumer confusion, but the
19 fact that it can't, helps this Court gauge the likelihood of Plaintiff's
20 meeting its burden of proof at trial. Both seem to be low.

21   **5.   Marketing Channels do not Evidence Consumer Confusion**

22   When it comes to location, there are seven states that came up in
23 discovery. Plaintiff occupies all seven. (SUF 17) Defendant occupies
24 three counties in only one state —something Plaintiff's evidence does
25 not dispute. (SUF 18) Plaintiff has not provided any concrete evidence
26 reflecting that Defendant travels to New Jersey to provide its services.
27 Nor Plaintiff produced any evidence that Defendant travels Colorado,
28 Florida, Idaho, Nevada or Texas.



But since we are still under the same favorable light benefitting Plaintiff, even assuming Plaintiff could somehow come up with some evidence without the help of discovery (which remains strictly closed) this factor is still trivial. Even if Plaintiff could conjure something up post-discovery and manage to get it admitted into evidence, no reasonable jury member could make a conclusive determination of likely consumer confusion while the jury is also considering seven other factors simultaneously —all of which soften whatever importance this factor could ever hold.

The websites. According to the Ninth Circuit, this seems to be borderline useless. Because virtually all businesses have a website, the Ninth Circuit explains. "[I]t would be rare commercial retailer that did not advertise online," the Ninth Circuit explains, then applies the fact to the Lanham Act context. The Court concludes, "the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, supra*, 1151.

Using identical marketing channels of the Internet, each website would appear within search results, and "[g]iven the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight." *Playboy Enters. v. Netscape Communs. Corp.,* 354 F.3d 1020, 1028 (9th Cir. 2004)

Here, Parties do have the Internet in common. (SUF 29-30) Plaintiff's Complaint even identifies Defendant's Internet presence.(Am. Compl. ¶ 15.) Plaintiff does not have much in evidence about other relevant marketing channels for Defendant. The only cognizable connection remaining from Plaintiff's evidence is three counties in one state out of the seven states Plaintiff is in. And the minimal value of the shared geography is outweighed by the Ninth



1  Circuit's recognition of the undisputed realities of the Internet.

2       **6.    These Buyers are Careful.**

3       Courts  traditionally  consider  the  reasonably  prudent  buyer
4  exercising ordinary caution and how careful they are in their purchases.
5  *Official  Airline  Guides,  Inc.  v.  Goss*, 6 F.3d 1385 (9th Cir. 1993)
6  Because it can correct those accusing the buyer of being confused.
7  There is a greater chance of likelihood of confusion if the consumer
8  is not too careful in making a purchase. *Playboy Enterprises, supra*,
9  1028. But if the buyer knows what he's getting into, if he is paying
10 attention, he is unlikely to be confused about the service he examines.

11      Plaintiff proves the point. In this case, buyers are careful and
12 well-informed because Plaintiff makes them so. In fact, Plaintiff
13 ensures it. For example, if one wants to go Solar and reaches out to
14 Plaintiff, he can send them a Letter of Intent. With the Letter of
15 Intent, a potential buyer sends Plaintiff personal information about
16 himself and his home, including name, address, phone number, and home
17 information (including energy usage and roof type.) Then there's the
18 appointment form. On the appointment form, Plaintiff says it would like
19 to schedule an appointment with the buyer. (SUF 37, 39)

20      The buyer can even enter into a Power Purchase Agreement with
21 Plaintiff. So a buyer can have Plaintiff install, own, and operate
22 energy out of the buyer's own property for a set period of time. The
23 buyer can also choose to sign a lease agreement with Plaintiff and make
24 monthly payments. Plaintiff even offers a Solar loan. With the loan
25 from Plaintiff, the buyer can take on debt to finance their Solar
26 energy. (SUF 38) In any event, whichever commitment buyer selects,
27 Plaintiff's agents come over to buyer's property and they work on the
28 property for 6-8 weeks. (SUF 45) And the buyer is contractually bound



1 | to Plaintiff.

2 |     This does not seem to be a one-click purchase. Plaintiff's evidence
3 | shows that Plaintiff gives buyers plenty of opportunities to exercise
4 | a high level of care, and Plaintiff even offers a consultation. (SUF
5 | 46) When it comes to Plaintiff's services the buyer can't be hasty even
6 | if he wanted to.

7 |     And because the transaction is not casual, the likelihood that
8 | these customers would be confused is slim to none. Instead, a potential
9 | customer is sufficiently familiar with the facts because the evidence
10 | shows that Plaintiff ensures its customers are staying well-informed
11 | and not purchasing on impulse.

12 |     During a tradename misappropriation case for ale, Lord Macnaughten
13 | once said: "Thirsty folk want beer, not explanations." *Am. Auto. Ins.*
14 | *Co. v. Am. Auto Club,* 184 F.2d 407 (9th Cir. 1950), citing *Montgomery*
15 | *v. Thompson*, 1891, A.C. 217, 225.)

16 |     This is no beer.

17 |     **7.   Defendant's Intent is Missing from the Record.**

18 |     Of course, Defendant's intent is irrelevant for Plaintiff to prove
19 | a likelihood of confusion. But one piece of evidence that strongly
20 | indicates a likelihood of confusion is Defendant's intent. *Brookfield,*
21 | *supra,* 1059. Here, Plaintiff none of it.

22 |     When Mr. Kelly was asked to explain Plaintiff's claim that
23 | Defendant allegedly knew of Plaintiff's servicemark beforehand, he
24 | admitted that he had no personal knowledge about it. When Mr. Kelly
25 | was asked whether he had any personal knowledge about whether Defendant
26 | allegedly intended to exploit Plaintiff's brand, Mr. Kelly revealed
27 | that he could only make assumptions. (SUF 47)

28 |     Then he recited a vague account about some prospective customers



he heard of, who are probably going to Defendant instead of Plaintiff, because the customers are probably confused, and it would probably be pretty obvious to Defendant that Plaintiff set them up. "Defendant would have willfully taken the customer," said Mr. Kelly said. But Plaintiff failed to provide any evidence in support of this 20-car pile-up of possibilities. As to the people associated with Plaintiff who knew about Defendant's alleged willful conduct, Mr. Kelly was unaware of anyone. (SUF 47)

Other notable absentees in the record further tip the scales in Defendant's favor. Nothing here suggests that Defendant had any ill-intent in choosing its tradename. Nothing suggests that Defendant selected its tradename in an attempt to associate itself with Plaintiff. Nothing suggests that Defendant tried to benefit from Plaintiff's servicemark. And nothing under the Sun suggests any reason at all as to why Defendant would want to do any of that.

Interestingly enough, Plaintiff does have evidence that Plaintiff knew of Defendant and its tradename before Plaintiff applied to register Plaintiff's mark. Not that it's relevant to this motion.

**8.   Expansion in Product Lines is Irrelevant.**

Where two companies are direct competitors, this factor is unimportant. Network Automation, supra 1153; see also Playboy Enters., 354 F.3d 1020(ruling that expansion factor is not relevant when goods are already related.)

Plaintiff and Defendant are both in the Solar energy industry. This item does not hold much weight and it is not factored into the analysis.

**C.   Defendant is Unlikely to Confuse.**

Without the likelihood of consumer confusion element, anyone could



1  claim exclusive rights to a word so long as they are the first in line

2  at the government doorsteps to register it. Because the Lanham Act is

3  designed to prevent unfair competition, it is no surprise that the word

4  Confusion is repeated multiple times throughout the statute. The focus

5  of the Lanham Act is not uses of a registered trademark. The focus of

6  the Lanham Act is uses of a registered trademark that confuse.

7      This motion fleshes out each Sleekcraft factor. At the end of the

8  day, Plaintiff does not have enough evidence. The jury will not have

9  much to look at, and that is a matter of law.

10     **D. Plaintiff Cannot Link Defendant to Alleged Injuries.**

11     As discussed, there is no issue of material fact and they are not

12  enough to take to a jury. Thus, Defendant merits summary judgement on

13  all counts.

14     If the Court enters judgment in favor of Defendant, then for the

15  purposes of this Court, the issues discussed below are irrelevant.

16     But if the Court does not enter summary judgement, then Defendant

17  alternatively   moves   for   partial   summary   judgement   concerning

18  Plaintiff's monetary relief and right to a jury trial.

19     **E. Defendant Requests Partial Summary Judgment on Damages.**

20     California law and the Lanham Act permit recovery of monetary

21  damages for infringement and lost profits. But only if Plaintiff

22  successfully shows that the alleged infringement and loss of profits

23  are attributable to Defendant. 15 U.S.C. § 1117(a); Cal. Bus. & Prof.

24  Code § 17204.

25     California law's unfair competition limits Plaintiff's recovery

26  of money damages only to restitution and injunctive relief. Cal. Bus.

27  & Prof. Code §§ 17203 and 17204; *Pfizer Inc. v. Sup. Ct.,* 182 Cal. App.

28  4th 622, 631 (Ct. App. 2010. The burden is on the Plaintiff to prove



the fact and the amount of the damages Plaintiff alleges to have suffered. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), rev'd on other grounds. But Plaintiff lacks evidence of the amount of the damages. In fact, Plaintiff lacks evidence that it suffered damages.

"A party cannot obtain monetary relief based upon vague and unsupported assertions of harm." *See Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. EDCV 13 02123 VAP (DTBx), 2015 WL 3498607, at *6 (C.D. Cal. June 2, 2015)(granting summary judgment on plaintiff's claim for actual damages because there was no evidence of lost profits, and the plaintiff's most qualified Rule 30(b)(6) person did not know of the lost profits that resulted from the alleged infringement).

Here, there is no evidence of any damage, let alone a specific amount of damages Plaintiffs would be entitled to recover. The record just contains vague and inadmissible estimates.

In fact, no objective evidence exists that explains how Plaintiff came to conclude that Defendant harmed Plaintiff. Nor is there an expert analysis on it. In fact, there is no expert analysis of anything related to Plaintiff's alleged damages.

Cal. Bus. & Prof. Code § 17200 does not help Plaintiff either. If applicable it may have allowed Plaintiff to be returned the money Defendant supposedly obtained from Plaintiff by unfair business practices. Plaintiff does not have any evidence that Defendant allegedly violated Plaintiff's rights and then took Plaintiff's money. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144-52.

The Lanham Act gives Plaintiff one last chance to make some money out of this lawsuit. Perhaps a party can recover "(1) as a substitute measure of damages for Plaintiff's own damages when the parties are in



direct competition and Defendants' sales are attributable to the infringing conduct or (2) when trademark infringement is 'willfully calculated to exploit the advantage of an established mark.'" *Blau v. YMI Jeanswear, Inc.*, No. CV 02-09551 FMC (SHSx), 2004 WL 5313967, at *3 (C.D. Cal. Jan. 2, 2004) (*quoting Lindy Pen*, 982 F.2d at 1405, 1407–08)(dismissing all claims for damages on summary judgment). But only if Plaintiff is successful in its trademark infringement claim.

Shining a light ever most favorable over Plaintiff, even if Plaintiff can somehow lead anyone to believe that Defendant's tradename is probably confusing not just one person, but an appreciable number of people, Plaintiff's materials still lack objective facts regarding Plaintiff's alleged injuries. Here, not one reasonable juror could possibly conclude that Plaintiff lost any money, let alone it lost a specific number of dollars.

Plus, Plaintiff accused Defendant of intentionally taking advantage of Plaintiff's goodwill and recognition yet cannot provide anything concrete that Defendant was indeed malicious. Already above, we discussed it, dissected it, and came up empty.

**F.   Plaintiff Cannot Proceed to a Jury**

If this Court finds that Plaintiff's claim to a monetary relief is not viable, then Plaintiff loses the right to a jury trial.

The Constitution of the United States, through the Seventh Amendment, only preserves the right to a jury for claims at law, not at equity. *Anhing Corp. v. Thuan Phong Co.,* No. CV 13-05167, 2015 WL 4517846, at *4 (C.D. Cal. July 24, 2015), appeal dismissed (Oct. 14, 2016) (citing U.S. Const. amend. VII; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) What's left is Plaintiff's one final attempt at seeking an injunction, an equitable remedy that stops



Plaintiff from facing a jury. *See AntiMonopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 308 (9th Cir. 1979) (affirming order vacating jury trial after legal claims were dismissed and only equitable claims remained).

That is what Plaintiff can get from this suit at the very, *very* best. Though the Sun does not shine too bright on this one either.

**CONCLUSION**

This Court is not the proper venue for claims of imagination. Plaintiff does not have a coherent story of a violation of its rights. The Lanham Act intends to discipline those likely causing deception among consumers, so that the market remains fair and honest for us all. But the Lanham Act does not carve out an exception for conspiracy theories.

Defendant requests entry of summary disposition in full.


DATED: APRIL 24, 2023                          **KROGH & DECKER, LLP**


                                        By: */cagil arel/*
                                        _____

                                        CAGIL AREL
                                        Attorney for Defendant,
                                        Infinite Energy Home Services,
                                        Inc.



34