UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| INFINITY ENERGY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>INFINITE ENERGY HOME SERVICES, INC., a California Corporation,<br><br>Defendant. | No. 2:21-cv-00438 WBS KJN<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Infinity Energy, Inc., brought this action against defendant Infinite Energy Home Services, Inc., alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1114; false designation of origin under 15 U.S.C. § 1125; violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and intentional interference with prospective economic advantage under California law. (FAC (Docket No. 7).) Defendant now moves for summary judgment. (Mot. (Docket No. 33).)

1

I.   Factual Background

Plaintiff provides solar energy services and does business in California, Texas, Nevada, Idaho, Florida, Colorado, and New Jersey.  (See id. ¶¶ 10, 17.)  Plaintiff has a registered trademark for the name "Infinity Energy" in connection with the installation of solar energy systems and alternative energy products for residential and commercial use.  (Def.'s Statement of Undisputed Facts ("SUF") (Docket No. 33-4) ¶ 1.)

Defendant uses the name Infinite Energy or Infinite Energy Home Services to market its solar energy services, as well as other home-related services.  (See id. ¶¶ 14, 16, 43.) Defendant does business in El Dorado County, Placer County, and Sacramento County in California.  (Id. ¶ 18.)  Defendant does not do any business outside those three counties.  (See id.)

II.  Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party may move for summary judgment either for one or more claims or defenses, or for portions thereof.  Id.  Where a court grants summary judgment only as to a portion of a claim or defense, it "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."  Id. at 56(g).

A material fact is one "that might affect the outcome of the suit under the governing law," and a genuine issue is one that could permit a reasonable trier of fact to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact and may satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant may demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.  The burden then shifts to the non-moving party to set forth specific facts to show that there is a genuine issue for trial.  See id. at 324.  Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. Discussion

     A successful trademark infringement claim requires a showing that the claimant holds a protectable mark and that the alleged infringer's imitating mark is similar enough to "cause confusion, or to cause mistake, or to deceive."  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004).  Defendant moves for summary judgment on the basis that there is no likelihood of confusion.

     A likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." Nutri/System, Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 604 (9th Cir. 1987).  In AMF Inc. v. Sleekcraft Boats, 599 F.2d 341

1  (9th Cir. 1979), the Ninth Circuit delineated eight factors to be
2  considered as part of the consumer confusion inquiry.  Id. at
3  348-49.  The Sleekcraft factors are: (1) the similarity of the
4  marks; (2) the strength of the plaintiff's mark; (3) the
5  relatedness or proximity of the goods; (4) the marketing channels
6  used by each party; (5) the degree of care likely to be exercised
7  by the purchaser; (6) the defendant's intent in selecting the
8  mark; (7) evidence of actual confusion; and (8) the likelihood of
9  expansion of the parties' product lines.  Id.  These factors "are
10 non-exhaustive and applied flexibly."  JL Beverage Co., LLC v.
11 Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016).

   A.   Similarity of the Marks

        "The first Sleekcraft factor -- the similarity of the
marks -- has always been considered a critical question in the
likelihood-of-confusion analysis."  GoTo.com, Inc. v. Walt Disney
Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  To determine the
similarity of marks, "first, the marks must be considered in
their entirety and as they appear in the marketplace; second,
similarity is adjudged in terms of appearance, sound and meaning;
and third, similarities are weighed more heavily than
differences."  Id. (internal citations omitted).

        Plaintiff's mark appears in the marketplace as
"infinity energy" with a small logo incorporating the infinity
symbol to the left of the company name, using a pale green and
grey color scheme, as shown below.  (Def.'s SUF ¶ 42.)



4

1          The parties dispute how defendant's mark appears in the
2    marketplace.  Defendant contends that its mark appears as
3    "INFINITE ENERGY HOME SERVICES," with the descriptors "Solar –
4    Roofing – Electrical – Home Battery – HVAC – Windows" appearing
5    below the company name, along with a large logo incorporating the
6    infinity symbol above the company name, using a medium green and
7    black color scheme.  (Def.'s SUF ¶ 43.)  Plaintiff contends that
8    defendant changed its mark following the initiation of this
9    action, but previously used only "INFINITE ENERGY" as its mark,
10   and continues to use the "INFINITE ENERGY" mark alongside the
11   updated "INIFINITE HOME ENERGY SERVICES" mark, as shown below.
12   (Pl.'s Statement of Disputed Facts (Docket No. 40-3) ¶ 43.)

 

18         The marks are not so dissimilar that summary judgment
19   is warranted.  To the contrary, the names "Infinite Energy" and
20   "Infinity Energy" are very similar; "infinite" and "infinity"
21   refer to the same concept, sound similar when spoken, and
22   visually differ by only a single letter.  See GoTo.com, 202 F.3d
23   at 1205 (appearance, sound, and meaning are considered in
24   determining similarity).  Even assuming that defendant's
25   representation of its mark is accurate and that it always
26   includes the additional descriptors listed above, defendant
27   admits that it also uses the name "Infinite Energy" in the
28   marketplace.  (See SUF ¶ 14.)  Regardless, the addition of "Home

5

Services" does not necessarily negate the linguistic similarity of the names. See Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1212 (9th Cir. 2012) (reasonable juror could find likelihood of confusion despite addition of a word to company name); GoTo.com, 202 F.3d at 1205 (similarities are weighed more heavily than differences). Further, both companies utilize a logo incorporating the infinity symbol and a green color scheme. See GoTo.com, 202 F.3d at 1206 (colors and shapes used in logos are relevant in analyzing similarity). There is therefore at least a question of material fact as to the similarity of the marks, which weighs against granting summary judgment.

  B. Strength of the Mark

  "A mark's strength is 'evaluated in terms of its conceptual strength and commercial strength.'" JL Beverage Co., 828 F.3d at 1106 (quoting GoTo.com, 202 F.3d at 1207).

  "A mark's conceptual strength 'depends largely on the obviousness of its connection to the good or service to which it refers.'" Id. at 1107 (quoting Fortune Dynamic, 618 F.3d at 1032–33). Conceptual strength is determined by the mark's placement on a continuum of increasing distinctiveness: (1) generic (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). As the uniqueness of the mark increases, so too does the degree of protection. JL Beverage Co., 828 F.3d at 1106.

  "Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and trigger the highest degree

6

of trademark protection." Id. at 1107 (internal quotation marks omitted). "In the middle of the spectrum are suggestive marks, which suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product." Id. "Descriptive and generic marks, at the other end of the spectrum, are the two weakest categories. Descriptive marks define a particular characteristic of the product in a way that does not require any imagination, while generic marks describe the product in its entirety and are not entitled to trademark protection." Id.

At best, plaintiff's mark "Infinity Energy" fits into either the "suggestive" category because it requires one to presume the nature of the program or services, or the "descriptive" category because it references some of the characteristics of plaintiff's services. See id. This would place plaintiff's mark on the weak-to-moderate portion of the continuum.

In contrast to conceptual strength, commercial strength "is based on actual marketplace recognition." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). "Commercial strength may be demonstrated by commercial success, extensive advertising, length of exclusive use, and public recognition." Boler v. 3D Int'l, LLC, No. 2:14-cv-00658 TLN CKD, 2018 WL 5099274, at *4 (E.D. Cal. Oct. 17, 2018); see also Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002). A "suggestive or descriptive mark, which is conceptually weak, can have its overall strength as a mark bolstered by its commercial success." M2 Software, Inc., v.

7

1   Madacy Ent., 421 F.3d 1073, 1081 (9th Cir. 2005).

2         Plaintiff argues that its mark is commercially strong
3   because its service area has expanded from Northern California to
4   seven U.S. states, including a significant amount of business in
5   the area also serviced by defendant.  (See Opp'n (Docket No. 40)
6   at 2; Def.'s SUF ¶ 17.)  Such evidence can be relevant.  See JL
7   Beverage Co., 828 F.3d at 1109 (suggesting that geographic scope
8   of sales is relevant in evaluating commercial strength).
9   However, the geographic scope of plaintiff's services, without
10  more, does not appear sufficient to establish actual marketplace
11  recognition.  See Brookfield Commc'ns, Inc. v. W. Coast Ent.
12  Corp., 174 F.3d 1036, 1058 (9th Cir. 1999) (indicating that a
13  plaintiff must provide "substantial evidence establishing the
14  widespread recognition of its mark" to establish commercial
15  strength).  Plaintiff has not provided any other evidence of
16  commercial strength, for example "extensive advertising, length
17  of exclusive use, and public recognition."  See Boler, 2018 WL
18  5099274, at *4.  The court therefore concludes that, based on the
19  evidence before it, plaintiff's mark receives weak to moderate
20  protection, which weighs somewhat in favor of granting summary
21  judgment in defendant's favor; however, this factor alone is not
22  dispositive.

23      C.   Proximity of the Goods

24        "Related goods are generally more likely than unrelated
25  goods to confuse the public as to the producers of the goods."
26  Brookfield, 174 F.3d at 1055.  "For related goods, the danger
27  presented is that the public will mistakenly assume there is an
28  association between the producers of the related goods, though no

                                                    8

such association exists." Sleekcraft, 599 F.2d at 350.  It is undisputed that both parties provide solar energy installation services.  The services are therefore closely related, if not identical.  See Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 432 (9th Cir. 2017), abrogated on other grounds, Romag Fasteners, Inc. v. Fossil, Inc., 140 S. Ct. 1492 (2020) (indicating that goods that are "identical" or directly "competitive" are close in proximity).  The similarity of the services increases the likelihood of confusion and thus weighs against granting summary judgment in favor of defendant.

   D. Marketing Channels Used

    "[C]onvergent marketing channels increase the likelihood of confusion." Off. Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1393 (9th Cir. 1993).  Here, both parties utilize internet advertising.  However, some use of the internet for marketing alone does not constitute overlapping marketing channels.  Entrepreneur Media, 279 F.3d at 1151.  Instead, the court must examine "whether both parties use the Web as a substantial marketing and advertising channel . . . and whether the parties' marketing channels overlap in any other way." Id. (emphasis in original).  There is insufficient evidence here concerning the nature of the parties' internet advertising to determine whether that usage is "significant."  Additionally, there is evidence that defendant uses other marketing channels, including billboards and radio (see Def.'s Interrogs. (Docket No. 40-4) at 6); however, neither party addresses the extent of plaintiff's use (or lack thereof) of non-internet marketing methods.  Accordingly, there is a question of material fact on

the issue of marketing channels, which weighs against summary judgment.

   E.   Type of Goods and Degree of Care

"Low consumer care . . . increases the likelihood of confusion." Playboy Enter., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1028 (9th Cir. 2004). "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Network Automation, 638 F.3d at 1152 (quoting Sleekcraft, 599 F.2d at 353). "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases . . . though, confusion may still be likely." Id. (quoting Sleekcraft, 599 F.2d at 353).

The parties fail to present any information concerning the price of their services, though their briefing suggests that the cost of solar energy services is substantial. Assuming the prices of the parties' services are on the higher end, this suggests that customers are more likely to exercise a higher degree of care. See id. However, this factor is "less instructive" when -- as here -- there is a high degree of similarity between the marks and the goods. See Stone Creek, 875 F.3d at 435.

   F.   Defendant's Intent in Selecting the Mark

While "an intent to confuse consumers is not required for a finding of infringement," Brookfield, 174 F.3d at 1059, an intent to deceive can be strong evidence of a likelihood of confusion, Sleekcraft, 599 F.2d at 354. Plaintiff does not appear to dispute that defendant had no ill intent in selecting its mark. (See Opp'n at 7.) Such a lack of intent to deceive is

10

"largely irrelevant" in determining likelihood of confusion.  See Brookfield, 174 F.3d at 1059.

### G. Evidence of Actual Confusion

Evidence of actual confusion is strong evidence that future confusion is likely.  Nutri/System, 809 F.2d at 606. "Such evidence is not necessary for a finding of likelihood of confusion, but . . . is particularly potent."  Stone Creek, 875 F.3d at 433.

Here, plaintiff's Chief Sales Officer provided testimony concerning numerous instances in which customers of defendant's business have erroneously contacted plaintiff, intending to contact defendant.[1]  (See Dep. of Cameron Kelly (Docket No. 40-4 at 14-23) at 57.)  Also before the court is a copy of an email from a customer who defendant admits intended to contact defendant with a complaint about defendant's services, but erroneously contacted plaintiff.  (See Mot. at 24-25; Def.'s Ex. W (Docket No. 35 at 155-58)).  Further, plaintiff's expert opines that an analysis of the two companies' internet presences provides evidence of actual confusion.  (See Decl. and Exp. Rep. of Dr. Patrick Farrell (Docket No. 35 at 79-87) ¶¶ 18-25.)  Taken

---

[1] Defendant argues that this witness's testimony should be disregarded because it relies upon inadmissible hearsay. However, this objection is not necessarily applicable on summary judgment.  "If the contents of a document can be presented in a form that would be admissible at trial -- for example, through live testimony by the author of the document -- the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." Sandoval v. County of San Diego, 985 F.3d 657, 666 (9th Cir. 2021).  Here, defendant has not shown, and the court does not see, why the contents of the documents or anticipated testimony at issue could not possibly be properly presented at trial.

11

together, this evidence is sufficient to establish a question of material fact on the issue of actual confusion.  This factor therefore weighs against granting summary judgment in favor of defendant.

### H. Likelihood of Expansion of the Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354 (citation omitted). This factor is relevant where two companies are not yet competitors but might become so in the future; however, "[w]here two companies are direct competitors, this factor is unimportant." See Network Automation, 638 F.3d at 1153.  The parties seem to agree that the companies are direct competitors in providing solar services.  (See Mot. at 30; Opp'n at 3, 7.) This factor thus has little weight.

In light of the evidence presented by the parties concerning the Sleekcraft factors -- particularly the similarity of the marks, the proximity of the goods, and evidence of actual confusion -- the court concludes that there is at the very least a question of material fact as to whether there is a likelihood of customer confusion.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Docket No. 33) be, and the same hereby is, DENIED.[2]

---

[2] Defendant also requests that the court grant summary judgment on the issue of damages.  However, the parties' briefs

12

...

Dated: May 31, 2023

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

contain little discussion of this issue, and given that questions of fact remain on the issue of liability, it is premature to address damages. Regardless, defendant's argument -- that plaintiff must prove actual damages to recover on any of its claims -- is incorrect. The Lanham Act explicitly provides for monetary recovery without proof of actual damages. <u>See</u> 15 U.S.C. § 1117(c).